UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ADOLFO CRUZ and RODNEY
PARKER, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.                                  **CLASS ACTION**

CONSERVICE, LLC,

      Defendant.
_____/

## COMPLAINT

Conservice, LLC ("Conservice"), for years executed a scheme designed to unjustly enrich itself at the expense of individuals and entities that rent or own units at large residential and commercial buildings throughout the United States.  Conservice is a third-party service provider contracted by a building's owner or agent to prepare monthly billing statements for various services provided at that building for the building's tenants and owners.  For example, Conservice provides utility billing services, which includes utility and ancillary billing, metering equipment installation and maintenance, and conservation products and services.  Conservice is paid by the building's owner or agent for all of the services it provides to the building, including billing the tenants and unit owners.  However, in addition to receiving payment from the building it provides its services to, Conservice also charges the tenants and unit owners an additional monthly "Service Fee" of $4 or more simply for providing them with their monthly utility billing statement.  Conservice unjustly enriches itself by including a "Service Fee" on each and every monthly billing

1

statement it sends to the building's tenants and unit owners for which they did not consent or contract for. This practice of double-dipping, which Conservice engages in nationwide, costs tenants and unit owners tens of millions of dollars annually, which Conservice unjustly and illegally keeps for itself. Accordingly, Adolfo Cruz and Rodney Parker, on behalf of themselves and all others similarly situated, sue the Defendant to recover the money improperly taken from them by Conservice and to end this unjust billing practice, and allege as follows based upon personal knowledge as to all matters relating to themselves, and on information and belief based upon the investigation of their counsel as to all other matters:

## I.     PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Adolfo Cruz is, and at all material times was, a resident and citizen of Miami-Dade County, Florida. Mr. Cruz is a tenant at District West Gables and has rented there for 11 months. Since moving there, Mr. Cruz has received 11 billing invoices from Conservice charging him a total of $44.00 in "Service Fees."

2.     Plaintiff Rodney Parker is, and at all material times was, a resident and citizen of Hoover, Alabama. Mr. Parker is a tenant at the Park at Hoover and has rented there for 21 months. Since moving there, Mr. Parker has received 21 billing invoices from Conservice charging him a total of $89.25 in "Service Fees."

3.     Defendant Conservice is incorporated under the laws of Utah, with its principal place of business in Utah. Conservice does business regularly throughout the United States, including the state of Florida and Miami-Dade County.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this is an action for a sum exceeding $5,000,000, exclusive of interest and

costs, and the Plaintiffs and at least one Class member are citizens of a state different than the Defendant.

5.      This Court has personal jurisdiction over Conservice because it continuously and systematically operates, conducts, engages in, and carries on business in Florida by providing utility billing and monitoring services to hundreds of buildings throughout Florida, including Miami-Dade County. Moreover, Conservice purposefully avails itself of Florida's consumer market through the advertisement, promotion, and use of its utility billing services in Florida. Pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, this Court has personal jurisdiction over Conservice.  As set forth herein, Conservice has improperly collected and retained "Service Fees" from tenants in Florida and Miami-Dade County.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because: (1) Mr. Cruz's causes of action accrued within this judicial district and a substantial part of the events and omissions giving rise to Mr. Cruz's claims occurred here; (2) Mr. Cruz is a resident and citizen of this district; (3) Conservice routinely operates and solicits business in this district; and (4) Conservice's wrongful acts in the district have impacted the general public of this district, including the Plaintiffs.

## II.      FACTS

### A.      CONSERVICE PROVIDES UTILITY BILLING SERVICES TO BUILDINGS THROUGHOUT THE UNITED STATES.

7.      Conservice provides utility billing services to residential, commercial, and mixed-use building owners throughout the United States.  Conservice's utility billing services include utility and ancillary billing, metering equipment installation and maintenance, conservation products and services, as well as daily meter reads allowing for leak detection and asset integrity.

Conservice also provides products such as utility expense management, vacant billing and cost recovery, and resident payment processing.

8.      Conservice provides these services at large buildings throughout the United States. For performing these services, Conservice charges the building's owner or agent a fee and is paid for the services it provides, including for preparing and sending monthly invoices to a building's tenants and unit owners.  Those fees vary based on the services Conservice provides, and they are all paid by the building's owner or agent.

9.      As part of the services it provides to building owners, Conservice prepares and sends out utility bills to the tenants and unit owners at those buildings.   Even though the building owner pays Conservice, Conservice adds an additional "Service Fee" of $4.00 or more onto each and every monthly utility bill it provides to the tenants and unit owners at the buildings it services. Conservice states on the bill that "Conservice is a service provider contracted to prepare monthly statements and provide conservation resources."  But Conservice has no contract with the tenants. And what Conservice fails to inform the tenants and unit owners is that it is double-dipping because it has already been paid by the building owner and is charging the tenants and unit owners an additional fee for which they did not consent or contract.

**B.      CONSERVICE BILLED MR. CRUZ $4 A MONTH FOR PROVIDING HIM WITH HIS UTILITY BILL EVEN THOUGH CONSERVICE WAS PAID BY THE BUILDING FOR THAT BILLING SERVICE.**

10.     Mr. Cruz began renting at District West Gables on July 15, 2016.  District West Gables contracts with Conservice and Conservice is paid directly by the building's owner or its agent.  For the past 11 months, Mr. Cruz has received a bill from Conservice breaking out the following charges: parking, rent, trash, sewer, and water.   (Mr. Cruz's Conservice Invoice, attached as Ex. A).

11.     In addition to those charges, each and every month Conservice charged Mr. Cruz a "Service Fee" of $4 a month.  (*Id.*)  Even though Conservice was paid directly by the building's owner or its agent for those services, Conservice double-dipped and billed Mr. Cruz, along with each and every tenant of the District West Gables building, $4 a month for simply providing them with their utility statements.  Neither Mr. Cruz nor any of the tenants at District West Gables consented to or contracted with Conservice to pay the "Service Fee" included on the utility bills provided by Conservice to them.

12.     Over the course of 11 months, Mr. Cruz has paid Conservice $44 for providing him with a utility bill, which Conservice has unjustly retained for its own benefit.  Thus, at Mr. Cruz's building alone, which has approximately 75 units, Conservice has been enriched by tens of thousands of dollars by unjustly and illegally charging the tenants there a "Service Fee."

13.     Mr. Cruz had no information concerning how Conservice was actually compensated for its work or the true nature of its relationship with District West Gables.  In fact, Mr. Cruz did not have any knowledge about the facts regarding Conservice's billing practices or its relationship with District West Gables.  Accordingly, the payment by Mr. Cruz of the "Service Fee" was not voluntary and only achieved through deception, omission, and obfuscation.

### C.     CONSERVICE BILLED MR. PARKER $4.25 A MONTH FOR PROVIDING HIM WITH HIS UTILITY BILL EVEN THOUGH CONSERVICE WAS PAID BY THE BUILDING FOR THAT BILLING SERVICE.

14.     Mr. Parker began renting at the Park at Hoover in October 2015.  The Park at Hoover contracts with Conservice and Conservice is paid directly by the building's owner or its agent.  For the past 21 months, Mr. Parker has received a bill from Conservice breaking out the following charges: (1) City Service Fee; (2) Pest Control; (3) Sewer; (4) Trash; and (5) Water. (Mr. Parker's Conservice Invoice, attached as Ex. B).

15.     In addition to those charges, each and every month Conservice charged Mr. Parker a "Service Fee" of $4.25 a month.  (*Id.*)  Even though Conservice was paid directly by the building's owner or its agent for those services, Conservice double-dipped and billed Mr. Parker, along with each and every tenant of the Park at Hoover building, $4.25 a month for simply providing them with their utility statements.  Neither Mr. Parker nor any of the tenants at the Park at Hoover consented to or contracted with Conservice to pay the "Service Fee" included on the utility bills provided by Conservice to them.

16.     Over the course of the 21 months, Mr. Parker has paid Conservice $89.25 for providing him with a utility bill, which Conservice has unjustly retained.  Thus, at Mr. Parker's building alone, which has more than 1,000 units, Conservice has been enriched hundreds of thousands of dollars by unjustly and illegally charging the tenants a "Service Fee."

17.     Mr. Parker had no information concerning how Conservice was actually compensated for its work or the true nature of its relationship with the Park at Hoover.  In fact, Mr. Parker did not have any knowledge about the facts regarding Conservice's billing practices or its relationship with the Park at Hoover.  Accordingly, the payment by Mr. Parker of the "Service Fee" was not voluntary and only achieved through deception, omission, and obfuscation.

### III.     CLASS ACTION ALLEGATIONS

18.     The Plaintiffs bring this action against the Defendant pursuant to Rules 23(a), (b)(2), and (b)(3), of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons and entities similarly situated.  The Plaintiffs seek certification of the following classes (referred to collectively as the "Class"):

> **The Nationwide Class**
> All tenants that did not directly contract with Conservice but were charged a service fee by Conservice for preparing a utility billing

statement and paid that service fee within the applicable limitations period.

Excluded from the Nationwide Class are Conserve, LLC, and its affiliates and related companies, directors, corporate officers, and immediate family members, and any government entity.

### The Florida Class

All tenants in Florida that did not directly contract with Conserve but were charged a service fee by Conserve for preparing a utility billing statement and paid that service fee within the applicable limitations period.

Excluded from the Florida Class are Conserve, LLC, and its affiliates and related companies, directors, corporate officers, and immediate family members, and any government entity.

### The Alabama Class

All tenants in Alabama that did not directly contract with Conserve but were charged a service fee by Conserve for preparing a utility billing statement and paid that service fee within the applicable limitations period.

Excluded from the Alabama Class are Conserve, LLC, and its affiliates and related companies, directors, corporate officers, and immediate family members, and any government entity.

A.    **NUMEROSITY**

19.    The Nationwide Class consists of hundreds of thousands of individuals and entities that were charged a "Service Fee" by Conserve at buildings where they owned or rented and where the buildings' owners or agents paid Conserve for the services it provided.  The Florida and Alabama Classes consist of tens of thousands of current and former tenants that were charged a service fee by Conserve at buildings throughout Florida and Alabama where they owned or rented and Conserve was paid by the buildings' owners or agents for the services it provided

20.    The names and addresses of all Class members can be identified in the business records maintained by the Defendant because the Defendant mailed invoices with the "Service

Fee" on it to the Class members.  The precise number of Class members will be obtained through discovery but based on publicly available information, the numbers are clearly more than can be consolidated in one action, and it is impractical for each Class member to bring suit individually. For example, Conservice claims to provide services to hundreds of multi-family buildings throughout the United States.  As a result, there are likely thousands of Nationwide Class members, and thousands of Florida and Alabama Class members, at any specific point in time, and due to turnover, the actual number of current and former individuals and entities who are Class members is likely a significant multiple of that amount.  The Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

### B.   COMMONALITY

21.   There are questions of law and fact that are common to the claims of the Plaintiffs and the Class.  These common questions predominate over any questions that are particular to any individual Class member.  Among such common questions of law and fact are the following:

a.   Whether the Defendant included a "Service Fee" on all of the utility bills that it provided to the Class members;

b.   Whether the Class members paid the Defendant a "Service Fee" when they paid their utility bill;

c.   Whether the Defendant was paid by both the landlords and the tenants in all of the buildings in which it collected a "Service Fee;"

d.   Whether the Defendant was unjustly enriched by retaining the "Service Fee;" and

e.   The amount of damages the Class members sustained as a result of the Defendant's wrongful conduct, and the proper measure of such damage.

### C.   TYPICALITY

22.   The Plaintiffs claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the Defendant's unlawful conduct.  Each Class member has

sustained damages as a result of the Defendant's wrongful conduct in the same manner as the Plaintiffs – that is, each Class member was charged a "Service Fee" by Conservice for services for which the buildings' owner or agent already paid and for which the Class members did not contract nor consent to.

###### D.     ADEQUACY OF REPRESENTATION

23.     The Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  The Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent it.  There is no divergence of interests between the Plaintiffs and the unnamed Class members.  The Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

24.     To prosecute this case, the Plaintiffs have chosen the law firm of Buckner + Miles. This law firm is experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

###### E.     REQUIREMENTS OF FED R. CIV. P 23(b)(3)

###### 1.     Predominance

25.     The questions of law or fact common to the claims of the Plaintiffs and the Class predominate over any questions of law or fact affecting only individual members of the Class.  All claims by the Plaintiffs and the unnamed Class members are based on the Defendant's practice of charging the Class members a "Service Fee" and whether the Defendant was unjustly enriched by that practice.

26.     Common issues predominate when, as here, liability can be determined on a Class-wide basis.

27.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as it is in the case at bar, common questions will be held to predominate over individual questions.

28.     Because all claims by the Plaintiffs and the unnamed Class members are based on the same misconduct by the Defendant, in particular, that the Defendant charged the Class members a "Service Fee" for providing them with their utility bills — the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.

**2.     Superiority**

29.     A class action is superior to hundreds of individual actions in part because of the non-exhaustive factors listed below:

   a.     Joinder of all Class members would create extreme hardship and inconvenience because of their geographical dispersion. Class members reside throughout the United States.

   b.     Individual claims by the Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake.  The Defendant is large and well-funded and individual Class members' damages are relatively small.  Given the substantial costs of litigation, individual Class members are unable to prosecute and control separate actions.

   c.     The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.

   d.     The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

### IV.     CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE, FLORIDA, AND ALABAMA CLASSES)

30.     The Plaintiffs re-allege and incorporate paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.     Conservice received, and continues to receive, a "Service Fee" for the utility bills that it delivers to the Plaintiffs and the Class.  Conservice is paid for the services it provides by the buildings' owners or agents.  Thus, Conservice is double-dipping by charging the Plaintiffs and the Class a "Service Fee" to which they did not agree and for which it has already been compensated by the buildings' owners and agents.

32.     There is no contract between the Plaintiff or any of the Class members and Defendant.  Accordingly, neither the Plaintiffs nor the Class members ever contracted with Conservice nor did they ever consent to pay a "Service Fee" for generating their utility bills.

33.     The Plaintiffs and the Class directly conferred a benefit on Conservice in the form of the money that they paid for the "Service Fee" included on every utility bill provided to them by Conservice.  Conservice knowingly requested the benefit in the form of the "Service Fee" by including it on every invoice and voluntarily accepted that benefit by retaining the money paid by the Plaintiffs and the Class members in the form of the "Service Fee."  Thus, the benefit in the form of the payment of the "Service Fee" flowed directly to Conservice from the Plaintiffs and the Class members. Accordingly, Conservice holds money in the form of the "Service Fee" which, in equity and good conscience, belongs to the Plaintiffs.

34.     Conservice knowingly and wrongfully accepted and retained the "Service Fee" paid by the Plaintiff and the Class for its own benefit.  Accordingly, Conservice received benefits, in the form of the "Service Fee," that it unjustly retained at the expense of the Plaintiffs and the Class members.  The Defendant obtained the benefit of the "Service Fee" through its wrongful conduct.

35.     The circumstances are such that it would be inequitable and unjust to allow Conservice to retain the payments in the form of the "Service Fee" it collected from the Plaintiffs the Class.

11

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all similarly situated individuals and entities, demand judgment against Conservice for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, the costs incurred in bringing this action, and any other relief the Court deems just and proper.

<u>COUNT II</u>
<u>INJUNCTIVE RELIEF</u>
**(ON BEHALF OF THE NATIONWIDE, FLORIDA, AND ALABAMA CLASSES)**

36.     The Plaintiffs re-allege and incorporate paragraphs 1 through 29 of this Complaint as if fully set forth herein.

37.     Conservice's scheme to charge the Plaintiffs and the Class members a "Service Fee" for preparing their utility bills will continue to cause the Plaintiffs and the Class members significant economic loss.

38.     A money judgment will only compensate the Plaintiffs and individual Class members for past losses.  It will not stop Conservice from charging the Plaintiffs and the Class members an unlawful "Service Fee" in the future.

39.     No Class member has a practical or adequate remedy, either administratively or at law, to recover these future losses.  The cost of pursuing such claims far exceeds the amount at issue.

40.     Even a class action such as the one contemplated in this case is a monumental undertaking that cannot be mounted on a regular basis.

41.     Where multiple lawsuit are required to redress repeated wrongs, there is no adequate remedy at law and irreparable harm exists.

42.     Requiring Conservice to stop charging the Plaintiffs and the Class members a "Service Fee" does not place an undue hardship on Conservice because they have already been

compensated by the buildings' owners or agents and they have no right to charge the tenants and unit owners a "Service Fee" to which they did not agree. Moreover, Conservice's practice of charging a "Service Fee" places a substantial and significant burden on the Plaintiffs and the Class members because it deprives them of funds to which they are otherwise entitled.

43. The public interest is not offended by requiring Conservice to stop charging the Plaintiffs and the Class a "Service Fee" for preparing their utility bills especially considering that Conservice has already been paid.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated individuals and entities, demands injunctive relief against Conservice, prohibiting it from charging the Plaintiffs and the Class a "Service Fee" for providing them with their utility bills, and any other relief the Court deems just and proper.

**COUNT III**
**DECLARATORY RELIEF**
**(ON BEHALF OF THE NATIONWIDE, FLORIDA, AND ALABAMA CLASSES)**

44. The Plaintiffs re-allege and incorporate paragraphs 1 through 29 of this Complaint as if fully set forth herein.

45. Conservice received, and continues to receive, a "Service Fee" for the utility bills that it delivers to the Plaintiffs and the Class. Conservice has already been paid for this service by the buildings' owners or agents. Thus, Conservice is double-dipping by charging the Plaintiffs and the Class a "Service Fee" that it has already been compensated for by the buildings' owners and agents. Conservice has been unjustly enriched by collecting and retaining the "Service Fee" for its own benefit.

13

46.     Conservice's scheme to charge the Plaintiffs and the Class a "Service Fee" to which they did not agree will continue to cause the Plaintiffs and the Class members significant economic loss.

47.     A money judgment will only compensate individual Class members for past losses. It will not prevent Conservice from charging the Plaintiffs and the Class members a "Service Fee" in the future.

48.     No Class member has a practical or adequate remedy, either administratively or at law, to recover these future losses.  The cost of pursuing such claims far exceeds the amount at issue.

49.     Even a class action such as the one contemplated in this case is a monumental undertaking that cannot be mounted on a regular basis.

50.     Where multiple lawsuits are required to redress repeated wrongs, there is no adequate remedy at law and irreparable harm exists.

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all similarly situated individuals and entities, demand declaratory relief against Conservice, and seek a declaration that: (1) Conservice received a "Service Fee" from the Plaintiffs and the Class members, which it wrongfully and unjustly retained and that it is required to return to the Plaintiffs and the Class members; (2) Conservice may not charge a "Service Fee" for providing the Plaintiffs and the Class with its utility bills in the future; and (3) any other relief the Court deems just and proper.

## V.    <u>RELIEF REQUESTED</u>

The Plaintiffs respectfully request that this Court:

a)      Certify this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);

b)      Declare that the Conservice improperly collects and retains the "Service Fee" and that it has been unjustly enriched by improperly retaining the "Service Fee" that it

14

has charged the Plaintiff and the Class for providing them with their utility bills;

c)    Enjoin Conservice from charging the Plaintiffs and the Class a "Service Fee" in the future for preparing their utility bills;

d)    Award the Plaintiffs and the Class their compensatory damages;

e)    Award the Plaintiffs and the Class punitive damages;

f)    Award the Plaintiffs and the Class their attorney's fees, costs, and expenses; and

g)    Award the Plaintiffs and the Class such further relief as is appropriate in the interests of justice.

## VI.    DEMAND FOR JURY TRIAL

The Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted by law.

Dated: July 7, 2017.

Respectfully submitted,

s/Seth E. Miles
Seth E. Miles
(Florida Bar Number: 385530)
Attorney E-mail address: seth@bucknermiles.com
David M. Buckner
(Florida Bar Number: 060550)
Attorney E-mail address: david@bucknermiles.com
Brett E. von Borke
(Florida Bar Number: 044802)
Attorney E-mail address: vonborke@bucknermiles.com
Buckner +Miles
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 964-8003
Facsimile: (786) 523-0485

*Attorneys for Plaintiffs Adolfo Cruz and*
*Rodney Parker, on behalf of themselves and*
*all others similarly situated*

15